**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| SHELLYE PECHULIS, ANNA MARIE FALCONE, and JODIE HOLICH, individually, and on behalf of all others similarly situated, | Case No. _____ |
| *Plaintiffs*, | **JURY TRIAL DEMANDED** |
| v. | |
| PIPELINE HEALTH SYSTEMS LLC, a Delaware corporation, | |
| *Defendant*. | |

## CLASS ACTION COMPLAINT

Plaintiffs Shellye Pechulis, Anna Marie Falcone, and Jodie Holich ("Plaintiffs") bring this Class Action Complaint and Demand for Jury Trial against Defendant Pipeline Health Systems LLC ("Pipeline Health") to redress violations of the Worker Adjustment and Retraining Notification Act. Plaintiffs, for their Class Action Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief.

### NATURE OF THE ACTION

1. This case arises out of Pipeline Health's decision to shutter Westlake Hospital in August 2019 without providing the more than 500 employees that worked there with the required 60-day advance notice required by the Federal Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101, *et seq.*

2. Though Plaintiffs and the putative class members were technically employed, at least on paper, by an entity called Pipeline-Westlake Hospital LLC ("Pipeline-Westlake"), every aspect of the Westlake Hospital operation was controlled and directed exclusively by Pipeline

Health, including the decision to permanently close the hospital without providing the requisite

notice under the WARN Act. As such, pursuant to the Department of Labor's "single employer"

test, Pipeline Health is considered to have been Plaintiffs' and the putative class's employer for

WARN Act purposes and is jointly and severally liable for the violations alleged herein.

3.      Due to the nature of a plant closing, it is often the case that a direct employer may

not be solvent enough to pay its obligations under the WARN Act. The Department of Labor's

"single employer" test recognizes this reality and imposes liability on closely related entities that

were at least partially responsible for the decisions leading to WARN Act violations.

4.      Here, Pipeline Health was entirely (not just partially) responsible for each and

every decision leading to the closure of Westlake Hospital. In fact, Pipeline Health created the

Pipeline-Westlake entity for the sole purpose of acquiring—and then immediately closing—

Westlake Hospital pursuant to a strategy developed by Pipeline Health for the benefit of its

investors. To ensure that its investment strategy was carried out as intended, Pipeline Health

placed its officers and executives in exclusive control of the Pipeline-Westlake entity, and by

extension, the entire Westlake Hospital operation (even though none of them lived in Illinois or

anywhere even close to the Midwest). Pipeline-Westlake was a sham entity that had no

independent officers or executives and no decision-making authority whatsoever, even on routine

day-to-day matters at the hospital such as staffing, food service for patients, and maintenance.

5.      Even Pipeline Health's own executives and principals freely admit that Pipeline

Health—and not the sham Pipeline-Westlake entity—were the real owners and operators of

Westlake Hospital. For example, Pipeline Health principal Eric Whitaker appeared for a

regulatory hearing on April 30, 2019 and testified under oath that Pipeline Health "currently

owns and operates Westlake Hospital." Likewise, Pipeline Health's Chief Executive Officer

submitted written testimony to the Illinois General Assembly Appropriations-Human Services Committee for the "Keep Westlake Hospital Open" hearing that began with "I'm Jim Edwards, the CEO of Pipeline Health. We own and operate eight hospitals and medical centers across the United States, including . . . Westlake Hospital." These are just two of the many admissions that Pipeline Health made about its ownership and control of the hospital.[1] In fact, as demonstrated below, "single employer" liability can be easily established against Pipeline Health based almost entirely on the sworn testimony and public statements made by its own executives, including the stunning under-oath admission from Pipeline Health CEO Jim Edwards that Pipeline Health made the decision to acquire and then immediately close Westlake Hospital—and terminate all of the employees—before it even purchased the facility, and that only Pipeline Health had the control and authority to make that decision.

6.      Pursuant to its plan, Pipeline Health purchased Westlake Hospital on January 31, 2019, and then 15 days later, announced that it would immediately close it. For months, however, its efforts were blocked by various court orders, including a preliminary injunction secured by the Village of Melrose Park prohibiting Pipeline-Westlake from discontinuing any services or otherwise closing the hospital. Given that it had no interest in actually operating Westlake Hospital, Pipeline Health decided that it would rather put its sham Pipeline-Westlake entity into Chapter 7 bankruptcy than spend money running a hospital that it never wanted in the first place. Like all other decisions relating to the ownership and operation of the hospital, the decision to file for Chapter 7 bankruptcy—i.e., to liquidate the hospital's assets and terminate its employees—was made exclusively and entirely by Pipeline Health. Neither Pipeline Health nor

---

[1]     Even Pipeline Health's own website admits that "Pipeline Health owns and operates hospitals and healthcare organizations nationwide" and identifies Westlake Hospital as one of its many assets. *See* https://www.pipelinehealth.us/properties/ (last accessed Sept. 11, 2019).

Pipeline-Westlake provided the required WARN Act notice to the Westlake Hospital employees.

7.     On August 6, 2019, at Pipeline Health's direction, the sham Pipeline-Westlake entity filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Delaware, a forum located more than 800 miles away from Westlake Hospital and more than 2,700 miles away from Pipeline Health's and Pipeline-Westlake's shared corporate headquarters (a single office suite in El Segundo, California that also serves as the corporate headquarters to more than a dozen other "Pipeline" entities).[2] Upon motion by the United States Trustee, the case was transferred to the United States Bankruptcy Court for the Northern District of Illinois, where it remains pending. A few days later, on August 19, 2019, the Chapter 7 bankruptcy trustee notified 549 Westlake Hospital employees, including Plaintiffs, that their positions were terminated effective August 16, 2019. Plaintiffs and the putative class members were blindsided by this announcement, especially given that there was—and still is—a preliminary injunction in place prohibiting Pipeline-Westlake from closing the hospital.

8.     Accordingly, Plaintiffs bring this putative class action to hold Pipeline Health accountable for violating their rights under the WARN Act and to recover all available damages.

**JURISDICTION AND VENUE**

9.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims in this Complaint occurred within this District.

---

[2]     Plaintiffs anticipate that discovery will reveal the existence of additional "Pipeline" entities that may be appropriately added to this case, including Pipeline Health, LLC.

4

## PARTIES

11.     Plaintiff Pechulis is a resident of Cook County, Illinois who worked for Westlake Hospital as a Night Shift Charge Nurse from 2013 until she received a letter from the bankruptcy trustee on August 19, 2019 stating that she was terminated, effective August 16, 2019.

12.     Plaintiff Falcone is a resident of Cook County, Illinois who worked at Westlake Hospital as a Unit Secretary from 1985 until she received a letter from the bankruptcy trustee on August 19, 2019 stating that she was terminated, effective August 16, 2019.

13.     Plaintiff Holich is a resident of Cook County, Illinois who worked at Westlake Hospital as a Registered Nurse from 2015 until she received a letter from the bankruptcy trustee on August 19, 2019 stating that she was terminated, effective August 16, 2019.

14.     Defendant Pipeline Health Systems LLC is a limited liability company existing under the laws of the State of Delaware, with its principal place of business located at 898 Pacific Coast Highway, Suite 500, El Segundo, California 90245.

## FACTUAL ALLEGATIONS

***Pipeline Health Created Sham Entities To Buy and Quickly Close Westlake Hospital.***

15.     Pipeline Health is a privately-held investment company based in El Segundo, California. In or around June 2018, Pipeline Health reached an agreement in principal to purchase a portfolio of three hospitals from Tenet Healthcare Corporation, including Westlake Hospital.[3] However, given that Westlake Hospital was not a profit-generating hospital like the

---

[3]     Before Pipeline Health closed it, Westlake Hospital was a full-service hospital located in Melrose Park that provided comprehensive medical services—including emergency, radiology, rehabilitation, surgical, behavioral health, psychiatric, and in-patient detoxification—to community members in Melrose Park and the surrounding suburbs. Critically, Westlake Hospital provided crucial services to underserved patients, often at no or low cost. As such, Westlake Hospital treated tens of thousands of low-income and medically and socially vulnerable community members, including Medicaid beneficiaries and the uninsured.

other two—and that it was incurring losses on a monthly basis—Pipeline Health planned to close

it as soon as the transaction was complete and to relocate the hospital's supplies and resources,

including a highly profitable Bariatric Unit, to its other hospitals.

16.     On September 6, 2018, Pipeline Health submitted an application to the Illinois

Health Facilities and Services Review Board ("Review Board") seeking permission to purchase

Westlake Hospital, as required by the Illinois Health Facilities Planning Act.[4] The application

required the purchasing entity to swear under penalty of perjury that it would maintain the same

"charity care policy" already in place at Westlake Hospital "for a two-year period following the

change of ownership transaction." These mandatory requirements put the investment firm in a

difficult position: On the one hand, Pipeline Health knew that it would not follow through on any

sworn promises to provide charity care because it planned to permanently close the hospital

immediately upon purchase. On the other, Pipeline Health knew that without making the sworn

charity care promises, the Review Board would deny its application and Pipeline Health would

lose out on the opportunity to purchase the two profit-generating hospitals that its investors were

determined to acquire.

17.     Pipeline Health's solution was to create two shell companies—Pipeline-Westlake

and SRC Hospital Investments II LLC ("SRC")—that it would use to purchase and quickly close

the hospital. Pipeline Health exclusively controlled SRC and Pipeline-Westlake, and used the

two sham entities to make the knowingly false charity care promises and secure approval from

the Review Board. Pipeline Health concealed its involvement by listing only SRC and Pipeline-

---

[4]     The Illinois Health Facilities Planning Act was enacted, in part, to "establish an orderly
and comprehensive health care delivery system that will guarantee the availability of quality
health care to the general public" and "to maintain and improve the provision of essential health
care services and increase the accessibility of those services to the medically underserved and
indigent[.]" 20 ILCS 3960/2.

Westlake as the entities seeking permission to purchase Westlake Hospital.

18.     According to the September 6, 2018 application, if approved, Westlake Hospital would be owned and operated by SRC and its wholly-owned subsidiary, Pipeline-Westlake. The application was signed by Pipeline Health's President, Nicholas Orzano, in his capacity as Chief Executive Officer of *both* SRC and Pipeline-Westlake. Pipeline Health President Orzano also certified under penalty of perjury that the information submitted by SRC and Pipeline-Westlake was complete and correct even though he specifically knew that the information was false. Pipeline Health was not mentioned once in the entire 198-page application, which was approved by the Review Board on October 30, 2018.

19.     Having secured regulatory approval, Pipeline Health put its longtime scheme into action. On January 31, 2019, Pipeline Health moved forward with the purchase of Westlake Hospital, and then, less than three weeks later, on February 16, 2019, Pipeline Health announced that it would soon file an application to close it. This announcement came in the form of a press release that was issued by Pipeline Health, not SRC or Pipeline-Westlake.

20.     Pipeline Health filed its application to close Westlake Hospital with the Review Board on February 21, 2019.[5] Pipeline Health President Orzano again signed the application in his capacity as Chief Executive Officer of *both* SRC and Pipeline-Westlake and again certified under penalty of perjury that the information submitted in the application was true and correct.

---

[5]     Though Pipeline Health already made the decision to close Westlake Hospital at least 5 months earlier, the application pretended as though the closure was due to a confluence of negative externalities, including "a broad national trend over the past 20 years of moving away from inpatient care toward outpatient ambulatory care," the supposed reality of operating a hospital in a state with an "especially challenging climate from a reimbursement and government funding perspective," and a supposed decrease in the "demand for services at Westlake over the past three years." These excuses were just pretext. Pipeline Health was fully aware of these purported issues and decided to purchase the hospital anyway as part of its investment strategy.

Unlike the application to purchase Westlake Hospital, the February 21, 2019 application referred to Pipeline Health numerous times, including in several documents that were signed by Robert Heinemeier in his capacity as Chief Financial Officer of Pipeline Health and yet another representative of *both* SRC and Pipeline-Westlake.

***Pipeline Health Attempted To Unlawfully Shut Down Westlake Hospital Before Receiving Approval From The Review Board And In Violation Of Multiple Court Orders.***

21.     Though the application was placed on the Review Board's April 30, 2019 meeting agenda, Pipeline Health wasn't going to take any chances. In contravention of Illinois law, attempted to close Westlake Hospital before receiving regulatory approval.

22.     On April 9, 2019, citing significant monthly losses—which were undisputedly known to Pipeline Health before it purchased the hospital—Pipeline Health CEO Jim Edwards instructed senior-level Pipeline-Westlake personnel to begin shutting down all operations at Westlake Hospital due to his supposed concerns for patient safety. Specifically, Pipeline Health CEO Jim Edwards created and distributed an action plan to senior-level Pipeline-Westlake personnel, which instructed them to*, inter alia*, stop admitting new patients, immediately transfer existing patients out of the hospital, stop scheduling new procedures for any new or existing patient, and cancel all surgical and outpatient procedures that had already been scheduled.

23.     Pursuant to Pipeline Health's action plan, Pipeline Health CEO Jim Edwards also instructed senior-level Pipeline-Westlake personnel to distribute the WARN letters to all hospital employees on April 9, 2019. The WARN letters were drafted by Pipeline Health and indicated that Westlake Hospital would permanently close at some point between June 9 and June 23, 2019, and that all employees will be terminated.

24.     It is undisputed that Pipeline Health ordered the immediate suspension of services and hospital closure. As explained by an April 9, 2019 memorandum that was circulated to the

medical staff by senior Pipeline-Westlake personnel, "*Pipeline Health* has temporarily suspended inpatient admissions and all emergency surgeries at Westlake Hospital . . . The company today also issued WARN Act notices to Westlake employees, which provide staff 60 days advance notice of potential closure." (Emphasis added.) A few hours later, the Westlake Hospital website was updated with a new post stating, "*Pipeline Health* today announced a temporary service suspension at Westlake Hospital in Melrose Park." (Emphasis added.) The website post also featured a statement from Pipeline Health CEO Jim Edwards explaining that "[t]his action is being taken after considering all alternatives and with the best interest of our patients in mind."[6]

25.     Facing a public health crisis from the sudden shutdown of a local hospital serving especially vulnerable populations, the Village of Melrose Park secured a temporary restraining order ("TRO") in the Circuit Court of Cook County that prohibited Pipeline Health and its affiliates from closing Westlake Hospital before its application was approved by the Review Board. *See Village of Melrose Park v. Pipeline Health Systems LLC*, 2019 CH 03041 (Cir. Ct. Cook Cty., Ill.). When Pipeline Health continued forward with its closure plan in violation of the TRO, Melrose Park filed an emergency motion to hold Pipeline Health and its affiliates in contempt of court.

26.     An evidentiary hearing on the contempt motion was held on April 16, 2019 before the Chief Judge of the Cook County, Chancery Division, the Honorable Moshe Jacobius. During the hearing, Pipeline Health freely admitted that it suspended services at the hospital and began closing it down because it was supposedly concerned about patient safety—a defense that Chief Judge Jacobius rejected when he granted Melrose Park's motion for a directed finding and held

---

[6]      *See* www.westlakehosp.com/news (last accessed September 11, 2019).

Pipeline Health in indirect civil contempt.

27.     Nonetheless, during the April 16, 2019 evidentiary hearing, Pipeline Health's own witnesses established that Pipeline Health owned and operated Westlake Hospital and was the only company with the control and authority to suspend services at the facility.

28.     During the hearing, Pipeline Health CEO Jim Edwards testified that:

- he was "responsible for the overall operations and performance, including patient safety, at all of our eight hospitals in Dallas, Los Angeles, and here in the Chicagoland area," including Westlake Hospital;

- he was the person that made the decision to suspend services indefinitely at Westlake Hospital, and that he made that decision without consulting *any* of the hospital's department chairs because "they don't understand the overarching responsibilities of staffing in the hospital;" and

- he had the control and authority to discontinue services at Westlake Hospital and that none of the Pipeline-Westlake personnel had the control or authority to make that decision.

29.     Pipeline-Westlake "Chief Nursing Officer"[7] Roslyn Lennon also testified that:

- Pipeline Health owns and controls Westlake Hospital and is in control of all operational aspects and decisions; and

- both she and the "CEO" of Pipeline-Westlake (Joseph Ottolino) were directed by Pipeline Health to close down the hospital, cancel scheduled procedures, stop admitting new patients, and issue WARN letters on April 9, 2019.

30.     In short, the decision to shut down Westlake Hospital on April 9, 2019 was made by Pipeline Health and Westlake-Pipeline personnel had no ability to weigh in on the decision and no authority or control to stop it.

---

[7]     Pipeline Health gave certain Pipeline-Westlake personnel official-sounding titles like "Chief Nursing Officer," or in the case of Joseph Ottolino, "Chief Executive Officer," to make it appear to other hospital personnel as though they had the independent authority to operate Westlake Hospital. But these titles were meaningless. No Pipeline-Westlake employee— including the so-called "CEO" and "CNO"— had any authority or control over any aspect of the hospital. Rather, they were only there to carry out Pipeline Health's directions and instructions.

31.     On April 17, 2019, in yet another demonstration of its control and authority over Westlake Hospital, Pipeline Health CEO Jim Edwards, as publicity stunt, publicly announced that Pipeline Health would transfer ownership and control of the hospital to Melrose Park for free, stating "If Melrose Park truly values Westlake Hospital and is so sure it can do a better job of either running this antiquated facility or finding a buyer, they should take us up on this offer."

32.     On April 30, 2019, the Review Board granted Pipeline Health's application to close Westlake Hospital. Pipeline Health announced that the facility would close on May 3, 2019 at 4:00 p.m.

33.     On May 2, 2019, Melrose Park filed an action challenging the Review Board's decision to approve the application to close Westlake Hospital, along with an emergency motion to stay the Review Board's decision. The stay motion sought an order prohibiting Westlake Hospital from closing until after the administrative review action was adjudicated. *See Village of Melrose Park v. Illinois Health Facilities & Servs. Review Bd.*, 2019 CH 05553 (Cir. Ct. Cook Cty., Ill.). The State's Attorney of Cook County joined this action and motion on behalf of the People of the State of Illinois.

34.     On May 7, 2019, the court granted the motion to stay and ordered Pipeline-Westlake and SRC Hospital Investments II LLC to keep Westlake Hospital open pending adjudication of the action.

35.     The June 23, 2019 deadline to close the hospital that was identified in Pipeline Health's April 9, 2019 WARN letter came and went. Pipeline Health never updated the employees about the situation or notified them that it would be necessary to extend the WARN notice, as required by the WARN Act. *See* 20 CFR § 639.10 ("Additional notice is *required* when the date or schedule of dates of a planned plant closing or mass layoff is extended beyond

the date or the ending date of any 14-day period announced in the original notice") (emphasis added). The hospital simply remained open and the hospital employees remained employed. No additional notice was provided by Pipeline Health.

***Pipeline Health Directed Its Sham Pipeline-Westlake Entity To File For Bankruptcy.***

36.     On August 6, 2019, Pipeline Health directed its sham Pipeline-Westlake entity to file for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Delaware.

37.     Like all other decisions relating to the ownership and operation of the hospital, the decision to file for Chapter 7 bankruptcy—i.e., to liquidate the hospital's assets and terminate its employees—was made exclusively and entirely by Pipeline Health. Neither Pipeline Health nor Pipeline-Westlake provided any advance notice to the Westlake Hospital employees, let alone the 60 days' notice required by the WARN Act.

38.     Upon motion by the United States Trustee, the case was transferred to the United States Bankruptcy Court for the Northern District of Illinois, where it remains pending. A few days later, on August 19, 2019, the Chapter 7 bankruptcy trustee notified 549 Westlake Hospital employees, including Plaintiffs, that their positions were terminated effective August 16, 2019. Pipeline-Westlake's bankruptcy filing admitted that the entity was *insolvent* "as early as February 2019," thus proving that the sham entity was grossly undercapitalized and never intended to be the entity operating Westlake Hospital.

39.     Plaintiffs and the putative class members were blindsided by this announcement, especially given that there was—and still is—a preliminary injunction in place prohibiting Pipeline-Westlake from closing the hospital. Although Pipeline Health previously sent WARN notice to Plaintiffs and the putative class members on April 9, those letters specifically stated that Westlake Hospital would close between June 9 and June 23. The WARN Act requires that

12

additional notice must be provided to employees when the closing dates identified in the notice are no longer accurate, and thus, the previous WARN letters that Pipeline Health sent to the employees are insufficient to satisfy their obligations under the WARN Act.

40. To be clear, Pipeline Health's violation of the WARN Act was deliberate as it knew that there was a court-ordered injunction requiring the hospital to stay open and knew that if it had notified employees that it would be closing or filing for Chapter 7 bankruptcy, Melrose Park would again block its closure efforts by moving to enforce the preliminary injunction and seek sanctions. In this way, Pipeline Health made the cynical decision to deliberately violate its employees' rights in the interest of corporate expediency.

*          *          *

41. It is virtually undisputed that Pipeline Health exclusively owned, controlled, and operated Westlake Hospital, exclusively controlled the hospital employees and personnel, and exclusively controlled all hospital assets (which it used for its own pecuniary benefit, including by confiscating and transferring expensive medical supplies and equipment to its other hospitals and using Westlake Hospital's assets as collateral to finance its unrelated ventures).

42. Further, though Pipeline Health has already (and repeatedly) admitted to owning and operating Westlake Hospital, it's important to note that at least 3 of the 5 individuals on the Board of Managers of SRC—the entity that according to the regulatory filings, owns Pipeline-Westlake—also sit on the Board of Managers at Pipeline Health. Specifically, Jim Edwards (CEO and part owner of Pipeline Health), Nicholas Orzano (President of Pipeline Health), and Mark Bell (Founder and Co-President of Pipeline Health) also serve on the SRC Board of Managers. Pipeline Health President Nicholas Orzano and Pipeline Health CEO Jim Edwards took turns serving as the CEO of SRC, with Jim Edwards currently serving as CEO of both

13

Pipeline Health and SRC. Though Edwards, Orzano, and Bell already represent the majority

voting block of SRC, on information and belief, the remaining two individuals on the SRC Board

of Managers—Adam Grossman and Joshua Morris—also sit on Pipeline Health's Board of

Managers, meaning that the exact same five people sit on the Board of Managers of and control

both companies.

***Pipeline Health Is Playing The Exact Same Shell Game With Its Two Other Illinois Hospitals.***

43.    Unfortunately, Pipeline Health's fraudulent and deceptive corporate governance

strategy is by no means limited to its dealings with Westlake Hospital.

44.    Westlake Hospital was only one of three Illinois hospitals that Pipeline Health

purchased from Tenet Healthcare Corporation on January 31, 2019. The other two hospitals that

Pipeline Health purchased are Louis A. Weiss Memorial Hospital ("Weiss") in Chicago and West

Suburban Medical Center ("West Suburban") in Oak Park. Amazingly, Pipeline Health used the

*exact* same tactics to conceal its ownership and control of Weiss and West Suburban from the

Review Board, the State of Illionis, and the elected officials and residents of Chicago and Oak

Park.

45.    Specifically, when Pipeline Health submitted applications to the Review Board on

September 6, 2018 seeking permission to purchase Weiss and West Suburban, the Weiss

application stated that Weiss would be purchased by SRC—the exact same "parent" company

that was used to purchase Westlake Hospital and is exclusively controlled by Pipeline Health—

and its wholly owned subsidiary, Pipeline-Weiss Memorial Hospital LLC, and the West

Suburban application stated that West Suburban would be purchased by SRC and its wholly

owned subsidiary, Pipeline-West Suburban Medical Center LLC.

46.    Likewise, Pipeline Health President Nicholas Orzano—the same individual that

signed the Westlake Hospital application in his capacity as CEO of both Pipeline-Westlake and SRC—also signed both the Weiss and West Suburban applications in his capacity as CEO of Pipeline-Weiss Memorial Hospital LLC, Pipeline-West Suburban Medical Center LLC, and SRC.[8] Pipeline Health President Orzano also certified under penalty of perjury that the information submitted by Pipeline-Weiss Memorial Hospital LLC, Pipeline-West Suburban Medical Center LLC, and SRC was complete and correct even though he specifically knew that the information was false as the true owner and operator of Weiss and West Suburban—Pipeline Health—was not identified in either application and its existence was altogether concealed from the Review Board. Both applications were approved on October 30, 2018.

47.     To be sure, Pipeline-Weiss Memorial Hospital LLC, Pipeline-West Suburban, and SRC are sham entities that have no independent officers or executives and no decision-making authority whatsoever, and Pipeline Health is currently using these sham entities to own, operate, and control Weiss and West Suburban, just as it did with Westlake Hospital. In fact, all three entities share the exact same corporate headquarters—which is actually just a single office suite in a building in El Segundo, California— as both Pipeline Health and the Pipeline-Westlake entity.

48.     Pipeline Health's flagrant manipulation of the system endangers not only the former patients and employees of Westlake Hospital, but also everyone in the Chicago and Oak Park communities, especially those that currently rely on Weiss and West Suburban for health care and employment. Unlike non-profit hospitals, Weiss and West Suburban are owned by a

---

[8]     As explained in ¶ 42, *supra*, SRC's Board of Managers is comprised entirely of Pipeline Health's officers and executives: Jim Edwards (CEO and part owner of Pipeline Health), Nicholas Orzano (President of Pipeline Health), Mark Bell (Founder and Co-President of Pipeline Health), and Adam Grossman and Joshua Morris (on information and belief, Members of Pipeline Health's Board of Managers).

for-profit investment firm that cares about one thing and one thing only: money. Just as it did with Westlake Hospital, Pipeline Health structured the Weiss and West Suburban hospital entities as disposable objects that can be thrown away—or forced into Chapter 7 liquidation—as soon as they are no longer profitable or profitable enough for Pipeline Health's investors.[9]

### FACTS SPECIFIC TO PLAINTIFFS PECHULIS, FALCONE, AND HOLICH

49.    Plaintiff Pechulis was employed at Westlake Hospital beginning in 2013 as a Night Shift Charge Nurse. She was a full time employee.

50.    Plaintiff Pechulis received the April 9 WARN letter but received no subsequent notice relating to her termination until she received the Trustee's August 19, 2019 letter.

51.    Plaintiff Falcone was employed at Westlake Hospital beginning in 1985 as a Unit Secretary. She was a full time employee.

52.    Plaintiff Falcone received the April 9 WARN letter but received no subsequent notice related to her termination until she received the Trustee's August 19, 2019 letter.

53.    Plaintiff Holich was employed at Westlake Hospital beginning in 2015 as a Registered Nurse. She was a full time employee.

54.    Plaintiff Holich received the April 9 WARN letter but received no subsequent notice related to her termination until she received the Trustee's August 19, 2019 letter.

### CLASS ALLEGATIONS

55.    **Class Definition**: Plaintiffs bring this action on behalf of themselves and a proposed class defined as follows:

---

[9]     Given that Pipeline Health seems to be continuously moving its numerous shell companies around like pieces on a chessboard, Plaintiffs expressly reserve the right to supplement these allegations with new facts or instances of misconduct that become known during the pendency of this lawsuit.

16

All individuals that were employed by Pipeline-Westlake and terminated on August 16, 2019.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

56.     **Numerosity:** The total number of class members is, on information and belief, comprised of 549 individuals. The members of the Class will be easily identified through Defendant's records.

57.     **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the Class in that Plaintiffs and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct.

58.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions include, but are not limited to, the following:

(a)     Whether Plaintiffs and the Class were employees of Defendant for WARN Act purposes under the Department of Labor's "single employer" test;

(b)     Whether Plaintiffs and the Class suffered an "employment loss" as defined by the WARN Act;

(c)     Whether Plaintiffs and the Class were "affected employees" as defined by the WARN Act;

(d)    Whether Defendants failed to provide the notice required by the WARN Act; and

(e)    Whether Plaintiffs and the Class are entitled to damages permitted under the WARN Act.

59.    **Adequate Representation.** Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the other members of the Class.

60.    **Superiority**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

18

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE WARN ACT**
**(On Behalf of Plaintiffs and the Putative Class)**

61.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

62.     The WARN Act requires employers to give employees 60-day notice of plant closings or mass layoffs.

63.     For the reasons discussed above, Pipeline Health is a considered to be Plaintiffs' and the Class' employer for WARN Act purposes under the Department of Labor's "single employer" test.

64.     The closure of Westlake Hospital constitutes a "plant closing" within the meaning of the WARN Act because it is a single site of employment, the shutdown of which resulted in the employment loss of more than 50 full-time employees.

65.     Alternatively, the termination effectuated on August 16, 2019 was a "mass layoff" within the meaning of the WARN Act because it will have affected more than 500 employees during a 30-day period.

66.     Plaintiffs and members of the Class are "affected employees" within the meaning of the WARN Act because, as employees of Westlake Hospital, they were reasonably expected to experience employment loss as a result of the Chapter 7 bankruptcy filing and otherwise in the event of the termination of all employees at Westlake Hospital or the closure of the hospital.

67.     Plaintiffs and members of the Class are "aggrieved employees" because they did not receive timely notice under the WARN Act and a considered to be employees of Pipeline Health for WARN Act purposes pursuant to the Department of Labor's "single employer" test.

68.     The April 9 WARN letter was not effective because it was not provided to Plaintiffs and the Class members 60 days prior to their termination. Nor did Pipeline Health

provide additional notice as required by 20 C.F.R. § 639.10.

69.     Pipeline Health willfully violated the WARN Act because it knew, and has

known, that it would close Westlake Hospital but gave no effective notice of the expected or

anticipated date of closure.

70.     Pipeline Health is liable to Plaintiffs and members of the Class for back pay and

benefits for each day of the violation.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs Shellye Pechulis, Anna Marie Falcone, and Jodie Holich,

individually and on behalf of the members of the proposed Class, respectfully request that this

Court:

A.  Certify the Class under Federal Rule of Civil Procedure 23(a) and 23(b)(3), appointing Plaintiffs as Class Representatives, and appointing their undersigned counsel as Class Counsel;

B.  Declare that Defendant violated the WARN Act;

C.  Find that Defendant is Plaintiffs' and the Proposed Class members' "employer" within the meaning of the WARN Act; or, in the alternative, pierce the corporate veil of Pipeline-Westlake Hospital LLC to find that Defendant is liable for Pipeline-Westlake Hospital LLC's violation of the WARN Act;

D.  Require Defendant to pay back pay and benefits consistent with the WARN Act;

E.  Award all costs and reasonable attorneys' fees incurred in prosecuting this action; and

F.  Award such other and further relief as equity and justice may require.

Respectfully submitted,

**SHELLYE PECHULIS, ANNA MARIE FALCONE, and JODIE HOLICH,** individually and on behalf of all others similarly situated,

Dated: September 11, 2019                    By: /s/ Ari J. Scharg _____

*One of Plaintiffs' Attorneys*

Jay Edelson
jedelson@edelson.com
Ari Scharg
ascharg@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Michael Ovca
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs and the Putative Class*