UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHELLYE PECHULIS, *et. al.,* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 19-cv-06089 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| PIPELINE HEALTH SYSTEMS LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Shellye Pechulis, Anna Marie Falcone, and Jodie Holich ("Plaintiffs") filed a first amended class action complaint ("complaint") against defendant Pipeline Health Systems LLC. Plaintiffs brought a claim for violation of the Federal Worker Adjustment and Retraining Notification Act ("WARN") Act on behalf of plaintiffs and the putative WARN Act class and a claim for violation of the Illinois Wage Payment and Collection Act ("IWPCA") on behalf of plaintiffs Falcone and Holich and the putative IWPCA class. Pipeline Health now moves to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons outlined below, Pipeline Health's motion to dismiss [33] is denied.

**Background**

Plaintiffs allege the following facts in the complaint. Defendant Pipeline Health Systems LLC ("Pipeline Health") is a privately-held investment company based in El Segundo, California. In June 2018, Pipeline Health purchased a portfolio of three hospitals, including Westlake Hospital (the "Hospital"), which it planned to close as soon as the transaction was complete. On September 6, 2018, Pipeline Health submitted an application to the Illinois Health Facilities and Services Review Board ("Review Board") seeking permission to purchase the Hospital, as required by the Illinois Health Facilities Planning Act. The application required the purchasing entity to swear under

penalty of perjury that it would maintain the same "charity care policy" already in place at the Hospital for a two-year period following the change of ownership transaction. Given this requirement that it not close the hospital, Pipeline Health's solution was to create two shell companies—Pipeline-Westlake and SRC Hospital Investments II LLC ("SRC")—that it would use to purchase and quickly close the hospital.

According to the September 6, 2018 application, if approved, the Hospital would be owned and operated by SRC and its wholly-owned subsidiary, Pipeline-Westlake. The application was signed by Pipeline Health's President, Nicholas Orzano, in his capacity as Chief Executive Officer of both SRC and Pipeline-Westlake.

On January 31, 2019, Pipeline Health moved forward with the purchase of the Hospital and filed its application to close the Hospital with the Review Board on February 21, 2019. Pipeline Health President Orzano again signed the application in his capacity as Chief Executive Officer of both SRC and Pipeline-Westlake.

On April 9, 2019, before receiving regulatory approval, Pipeline Health CEO Jim Edwards instructed senior-level Pipeline-Westlake personnel to begin shutting down all operations at the Hospital. Specifically, Pipeline Health CEO Jim Edwards created and distributed an action plan to senior-level Pipeline-Westlake personnel, which instructed them to, inter alia, stop admitting new patients, immediately transfer existing patients out of the hospital, stop scheduling new procedures for any new or existing patient, and cancel all surgical and outpatient procedures that had already been scheduled.

Pursuant to Pipeline Health's action plan, Pipeline Health CEO Jim Edwards also instructed senior-level Pipeline-Westlake personnel to distribute the WARN letters to all hospital employees on April 9, 2019. The WARN letters were drafted by Pipeline Health and indicated that the Hospital would permanently close at some point between June 9 and June 23, 2019, and that all employees

will be terminated. The letter was silent as to repayment of any paid time off or vacation time that employees had accrued at that point. Plaintiffs have alleged that Pipeline Health exclusively owned, controlled, and operated the Hospital, exclusively controlled the hospital employees and personnel, and exclusively controlled all hospital assets.

The Village of Melrose Park secured a temporary restraining order ("TRO") in the Circuit Court of Cook County that prohibited Pipeline Health and its affiliates from closing the Hospital before its application was approved by the Review Board. When Pipeline Health continued forward with its closure plan in violation of the TRO, Melrose Park filed an emergency motion to hold Pipeline Health and its affiliates in contempt of court.

During the April 16, 2019 evidentiary hearing on the contempt motion, Pipeline Health's own witnesses testified that Pipeline Health owned and operated the Hospital and was the only company with the control and authority to suspend services at the facility. Pipeline Health CEO Jim Edwards testified that he was responsible for the overall operations and performance of the Hospital. He additionally testified that he made the decision to suspend services at the Hospital without consulting any of the hospital's department chairs because "they don't understand the overarching responsibilities of staffing in the hospital." Pipeline-Westlake Chief Nursing Officer Roslyn Lennon also testified that Pipeline Health owns and controls the Hospital and is in control of all operational aspects and decisions.

On April 30, 2019, the Review Board granted Pipeline Health's application to close the Hospital. On May 2, 2019, Melrose Park filed an action challenging the Review Board's decision to approve the application to close the Hospital, along with an emergency motion to stay the Review Board's decision. On May 7, 2019, the Circuit Court of Cook County granted the motion to stay and ordered Pipeline-Westlake and SRC to keep the Hospital open pending adjudication of the action.

3

On August 6, 2019, Pipeline Health directed Pipeline-Westlake to file for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Delaware. Pipeline-Westlake filed a Chapter 7 bankruptcy petition with the U.S. Bankruptcy Court for the District of Delaware and the Delaware Bankruptcy Court appointed a Chapter 7 Trustee. The Trustee was authorized and directed to: discharge and/or transfer the current patients in the Hospital to another accepting health care facility subject to 11 U.S.C. § 704(a)(12); retain employees as long as necessary and/or terminate employees in accordance with its business judgment; terminate such utilities as it determines are no longer necessary; and secure the Hospital facility.

On August 19, 2019, the Trustee notified 549 Hospital employees, including Plaintiffs, that their positions were terminated effective August 16, 2019. This notification was silent as to any repayment of paid time off and vacation time.

Plaintiff Pechulis is a resident of Cook County, Illinois who worked for the Hospital as a Night Shift Charge Nurse from 2013 until she received a letter from the bankruptcy trustee on August 19, 2019 stating that she was terminated, effective August 16, 2019. Plaintiff Falcone is a resident of Cook County, Illinois who worked at the Hospital as a Unit Secretary from 1985 until she received a letter from the bankruptcy trustee on August 19, 2019 stating that she was terminated, effective August 16, 2019. At the time of her termination, Plaintiff Falcone had accrued paid time off and vacation days for which she did not receive any payment. Plaintiff Holich is a resident of Cook County, Illinois who worked at the Hospital as a Registered Nurse from 2015 until she received a letter from the bankruptcy trustee on August 19, 2019 stating that she was terminated, effective August 16, 2019. At the time of her termination, Plaintiff Holich had accrued paid time off and vacation days for which she did not receive any payment.

Plaintiffs filed a first amended class action complaint ("complaint") against Pipeline Health on November 29, 2019. Plaintiffs brought a claim for violation of the WARN Act on behalf of

4

plaintiffs and the putative WARN Act class and a claim for violation of the IWPCA on behalf of plaintiffs Falcone and Holich and the putative IWPCA class. Pipeline now moves to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

**Legal Standard**

When considering a Rule 12(b)(6) motion, the Court accepts all of the plaintiff's allegations as true and views them "in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**Analysis**

**I. Count I - WARN Act**

Defendant moves to dismiss Plaintiff's WARN Act claim against it for a number of reasons including that it was not responsible for the decision to terminate, it does not qualify as an employer, and it did provide proper notice. The WARN Act "requires 'employers' (defined as businesses with 100 or more full-time employees) to provide employees with written notice of impending 'plant closings' or 'mass layoffs' at least sixty days prior to the closing or layoffs." *Ellis v. DHL Exp. Inc. (USA)*, 633 F.3d 522, 525 (7th Cir. 2011) (citations omitted). If an employer fails to provide the requisite notice, "it is liable to provide 'each aggrieved employee' with back pay and benefits for each day that the WARN Act was violated." *Id.* at 526. Plaintiffs allege that Defendant is liable under the WARN Act because it did not provide them with required notice prior to knowingly terminating

5

their employment by making the decision that Pipeline-Westlake would file for Chapter 7 bankruptcy.

### A. The Decision to Terminate Employment

Defendant's first argument is that it should not be liable under the WARN Act because it is the Chapter 7 Trustee, not the Defendant, that made the decision to close the Hospital and terminate the Plaintiffs' employment. It further argues that under the law, the Trustee was solely responsible for administering all aspects of the Hospital after the bankruptcy filing. This argument misses the point behind Plaintiffs' allegations, which assert that Defendant's decision to direct Pipeline-Westlake to file for Chapter 7 bankruptcy triggered its obligation to send termination notices to Plaintiffs. Because Chapter 7 bankruptcy is generally used for liquidation, when Pipeline Health made the decision to direct Pipeline-Westlake to file for Chapter 7 bankruptcy, it was aware that the result would be closing of the Hospital and termination of its employees. Several courts around the country have recognized the potential for WARN liability under similar circumstances. *See Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 146 (S.D.N.Y. 2004); *In re Shelby Yarn Co.*, 306 B.R. 523, 537–38 (W.D.N.C. 2004); *Bennett v. Roark Capital Grp., Inc.*, 738 F. Supp. 2d 157 (D. Me. 2010). Accordingly, Plaintiff's allegations are sufficient to get through the motion to dismiss stage.

### B. Whether Defendant Was an "Employer" under WARN Act

Defendant next argues that Pipeline Health was not an "employer" under the Act at the time of the terminations because it was not operating the Hospital as a going concern after the filing of the bankruptcy petition. Again, Plaintiff's allegation is that Defendant's decision pre-bankruptcy (the decision to direct Pipeline-Westlake to file for bankruptcy) is what triggered its WARN Act notice requirement. Thus, Defendant's reliance on cases involving the liquidating fiduciary exception to support its argument are unavailing.

6

Plaintiff has alleged that when Pipeline Health made the decision to direct Pipeline-Westlake to file for Chapter 7 bankruptcy, it qualified as an employer under the WARN Act under the single employer test. Plaintiff has alleged several facts to that end. Defendant has not challenged the sufficiency of plaintiff's allegations with respect to the single employer test.

*C. Insufficient Notice Under The WARN Act*

Pipeline Health argues that regardless of whether it qualifies as an employer, the notice provided by the bankruptcy trustee on August 19, 2019 satisfied the Act's notice requirement. The Hospital provided its initial notice on April 9, 2019 and noted that it would close between June 9 and June 23. The Hospital did not actually close its doors on those dates. It was not until August 19, fifty-seven days later, that the Trustee sent letters to employees notifying them that their positions were terminated as of August 16, 2019. Defendant argues the August 19 notice met requirements under the Act because notice was provided before 60 days post-June 23 and Plaintiffs have not challenged its contents as being deficient. Plaintiffs, on the other hand, argue that the Trustee did not send the August 19 letter on behalf of Pipeline Health and, therefore, Pipeline Health was not relieved of its notice obligation. They further argue that the Act requires Pipeline Health to send an additional notice "as soon as possible" after it knew of the bankruptcy filing, which it failed to do.

The Court need not address the sufficiency of the August 19 notice of termination or whether it qualified as a notice sent on behalf of Pipeline Health because Plaintiff has alleged the notice was insufficient purely based on the timeline. The regulations clearly state that additional notice of a postponement of a plant closing or mass layoff must be given to the relevant parties "as soon as possible." 20 C.F.R. § 639.10(a). Plaintiffs allege Pipeline Health directed Pipeline-Westlake to filed for Chapter 7 bankruptcy on August 6. The Trustee did not send notice to employees of the terminations until thirteen days later, on August 19. Pipeline Health provides no

7

excuse for why it did not send notices to the Hospital's employee's when it made the decision that the hospital will be liquidated. Court have found that even shorter delays qualify as a failure to send notice "as soon as possible." *See Local 1239, Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers v. Allsteel, Inc.,* No. 94 C 3552, 1995 WL 348028, at *5 (N.D. Ill. June 7, 1995) (Grady, J.) (finding that a ten-day delay was a violation under 20 C.F.R. § 639.10(a) and noting that even seven days would have been too long). Accordingly, Plaintiff has properly alleged a violation.

*D. Bankruptcy Automatic Stay and State Court Injunction*

Finally, Pipeline Health argues that even if additional notices were required, it was prohibited from providing them because the filing of the bankruptcy triggered the bankruptcy automatic stay. Defendant argues the stay prohibited it from taking any action that could affect the assets of the bankruptcy estate, such as closing the Hospital or terminating its employees. Pipeline Health argues the state court injunction also prohibited it from taking those actions, including before Pipeline-Westlake filed for bankruptcy, thereby tying its hands from lawfully providing notice.

Again, plaintiff has alleged that Pipeline Health's decision to direct Pipeline-Westlake to file for bankruptcy is what triggered the notice requirement under the WARN Act, at which time the bankruptcy automatic stay was not in place. The Court rejects Pipeline Health's attempt to use the state court injunction as a shield from the notice requirement. Pipeline Health seems to argue that the injunction, to which it was not a named party, prohibited it from issuing WARN Act notice to terminated employees. While the parties have not briefed the issue of federal preemption here, it will certainly come up again if Defendant continues to rely on this defense. *See English v. Gen. Elec. Co.,* 496 U.S. 72, 79, 110 S. Ct. 2270, 2275, 110 L. Ed. 2d 65 (1990) (noting the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements). If Pipeline Health was indeed covered by the injunction, then its decision to direct Pipeline-Westlake to file for Chapter 7 bankruptcy, which it knew would liquidate the hospital, was

8

in direct violation of the injunction. Accordingly, given the circular nature of this argument and the lack of briefing on the preemption issue, the Court will not rely on Pipeline Health's argument to dismiss plaintiffs' claim at this early stage. The Court rejects Pipeline Health's argument without prejudice.

## II. Illinois Wage Payment and Collection Act

Defendant next moves for dismissal of Plaintiffs' claims under the IWPCA. The IWPCA provides, in relevant part, that "whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay[.]" 820 ILCS 115/5. Plaintiffs allege that Pipeline Health violated the IWPCA when it did not pay out Plaintiffs' accrued paid time off and/or vacation time pursuant to and in accordance with their employment agreements and policies implemented at the Hospital.

*A. Whether Defendant is an "employer" under the Wage Act*

Plaintiffs allege that Pipeline Health qualifies as an employer under the IWPCA under the single employer and/or alter ego test. Pipeline Health argues this claim should be dismissed because the single employer or alter ego test do not apply to the IWPCA, and Illinois courts apply an entirely separate test to determine who is an "employer," which Plaintiffs cannot meet. Pipeline Health cites to the Illinois Supreme Court's articulated test to determine whether joint employers exist: "[t]he test for the existence of joint employers is whether two or more employers exert significant control over the same employees—where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment. Relevant factors to consider include the putative joint employer's role in hiring and firing; promotions and demotions; setting wages, work hours, and other terms and conditions of employment; discipline; and actual

9

day-to-day supervision and direction of employees on the job." *Andrews v. Kowa Printing Corp.,* 217 Ill. 2d 101, 117, 838 N.E.2d 894, 904 (2005) (internal citations and quotations omitted). Defendant argues that the complaint does not contain any allegations that Defendant made any employment decisions related to hiring or firing, promotion or demotion, setting wages and hours, discipline and supervision, or any other essential terms and conditions of employment.

Plaintiffs will need to prove that Pipeline Health did indeed exert this level of control over the Hospital as this case continues, but they have alleged enough facts to get past the motion to dismiss stage. Plaintiffs have alleged that Pipeline Health held complete control over the operations of the Hospital and that it installed its own directors and managers at the Hospital, including those in charge of daily operations, like staffing. As mentioned above, Plaintiffs cites to several statements by Pipeline Health's employees and the CEO, who testified that he made orders related to suspension of services without consulting hospital chairs and that he was responsible for the overall operations of the Hospital. Given the level of detail in Plaintiffs' complaint, the Court will allow them to move forward with their IWPCA claim.

B. *"Knowingly Permitted"*

Additionally, Defendants argue that Plaintiffs have failed to allege that Pipeline Health "knowingly permitted" a violation of the IWPCA. The provision of the IWPCA they cite to—820 ILCS 115/13—mandates that "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." This provision exists to determine when agents or officers of a corporation are deemed to be employers and is not relevant here, where Plaintiffs have alleged that Pipeline Health and the Hospital are a single (or joint) employer. Thus, this argument is irrelevant.

*C. Preemption*

Finally, Defendant argues that Plaintiff's claims are preempted by the U.S. Bankruptcy Code because they are post-petition claims against a debtor. As the Court has already noted, Plaintiffs' claims are not against the Hospital, SRC, or Pipeline-Westlake. The have brought claims against Pipeline Health, which they have alleged is their "employer" under the IWPCA. Because Pipeline Health has not filed for bankruptcy, its preemption argument is not relevant. Accordingly, the motion to dismiss is denied.

**Conclusion**

Based on the foregoing, Pipeline Health's motion to Dismiss [33] is denied.

IT IS SO ORDERED.

Date: 7/15/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge